This is a video of the KASKUEK COMPANIES    DIY BATTLEGROUND MODIFICATION DIY BATTLEGROUND MODIFICATION WORLD PAC INTL DIY BATTLEGROUND MODIFICATION WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL WORLD PAC INTL There's a, in the confidential appendix at 2611, there's an internal report as to that, and there's some testimony as to, by one of their technical people at 3254. In addition on that side of the ledger, on the side of the ledger that this was not disclosed, is Dr. Gilbert's written opinion at pages 1775 to 76, in which he opines that Element 5 is not anticipated, because the inner layer disclosed in JP 131 cannot absorb the colorant, it gets a coating. So that's all on the side of the ledger that we think should have led to the denial of summary judgment on this element. Could you address the question or the issue that, your arguments regarding Element 5, that you waived them? You never objected? Certainly, Your Honor. I'll need to address that with respect to all the elements. Let me make a general comment that applies to all of them. In looking at what arguments were made, you both need to consider the brief filed in opposition to the summary judgment motion, which begins at page, I think, 2518 of the appendix, and then immediately following, our response to the statement of undisputed facts that this case put in. Under the local rules that we were under there, the brief, which dealt with multiple issues, was limited to 15 pages. The Rule 56.1 statements going each way are really where the rubber meets the road. That's where this case says, these are the facts that entitle us to summary judgment, and where we point by point respond. I think in the red brief, the focus is really on just the brief, which I do think raises the issue as well. But I think it's important that we consider the 56.1 statement in response. And to specifically answer, Your Honor, the issue is raised, and the evidence, which I've just summarized, is cited in the brief at pages 2524 to 2525. There's a rollover paragraph or two. And then the same evidence... Is that Volume 2 of the appendix? Yes, I believe that's Volume 2. So the opposition brief begins at 2518, and the paragraph dealing with Elements 4 and 5 is at 2524 to 2525. And that includes citation to... Of course, the citations here are to the original record, but this case, Exhibit 14, is the Gilbert Report I mentioned. It includes some citations then to... Unfortunately, it's all a string. There's some citations to paragraphs from the 56.1 response, and those include their mention of that Research and Development Report and so forth. At 2524 to the next page, WorldPAC argues in its discrepancy, cellophane cannot absorb color and or flavor agents in an amount sufficient to impart color and or flavor to the foodstuff, and therefore the 613 patent was not anticipated. On appeal, WorldPAC argues that JP131 doesn't anticipate 613 because the former coats the inner casing with color and or flavoring while the latter impregnates the casing. Isn't that a different argument? I think it's the same argument, Your Honor. I wish it were more artfully done in the brief, but in fact, the citations here speak directly to the issue of coating as opposed to... Absorbing and coating are the opposite sides of the coin here. It is phrased in terms of lack of absorption. In the evidence we cited there, it's phrased in terms of taking a coating. I wish that that were not the case, but that's the way it was done. A little bit inartful, but I believe the issue's preserved properly. I'm well into rebuttal time. I assume I'm... We'll save you rebuttal time. Let's make sure that we've answered any questions of the panel. We're okay for the moment. Okay, because I did want to get to element four in particular if I could. Well, all right. Take a couple of minutes now. Okay, I'll try to do that quickly. I appreciate that. I thought coming here today I would be the first to use the phrase anticipation by equivalence, but I think that's what we have going on with respect to element four. The patent calls for an inner layer comprising fibers. The disclosure in the prior art is cellophane, which everybody agrees does not comprise fibers. This case hangs its hat on what we consider to be boilerplate language that appears in many patents that says although cellophane is preferred, another material having the same properties can be used as well. I think it's important to note it says same, not similar or some of. It's plural properties, not a single property. In fact, we're talking about anticipation here, not obviousness. This case cites a great deal of testimony from our expert with respect to element four. Some of it undoubtedly is helpful to them, but I think if it's helpful to them, it's helpful to them on the issue of obviousness, not anticipation. Finally, with respect to the issue of waiver of element four, which this case also argues, I think the short and the sufficient answer to that is that the district court, as this case acknowledges, saw the argument, responded to it, rejected it. Clearly, I think even if the district court had done that sua sponte, there'd be no reason for this court not to review it. In fact, the district court did it as we show in the brief because throughout the 56.1 statement, we reiterated that argument in several places. I appreciate getting my rebuttal time. Good. Thank you, Mr. Rosen. Mr. Larimer. Thank you, Your Honor. Good morning, and may it please the court. In opposing summary judgment in the district court, WorldPAC made two arguments. Both have been abandoned, and now before this court, they're making entirely new arguments on all three of the disputed claim elements. And under the rules of this court, that means that the arguments that they're attempting to make in this court have been waived. Let me go directly to what we refer to as element number five to illustrate the point I'm making about waiver. There was never any argument below or any reference below to the notion that there's a patentable distinction between impregnate and coat. Not mentioned once. That issue was never debated or litigated before Judge Bucklow, and it's being raised for the very first time here, and it's the only argument that they're offering in connection with element number five. It's waived. What about your opponent's argument that you have to look at all the 56.1 papers, too? Well, the rule, I think, Your Honor, on waiver is that if the question is not presented to the district court for decision, then it's waived. And these Rule 56 statements are not presented to the district court for decision. And so we don't know what Judge Bucklow did with those Rule 56 statements. But those Rule 56 statements are not prepared or presented for that purpose. And so if one wants the district court to decide the question based on the denial in the Rule 56 statements, one has to argue that to the court, and ordinarily that's done in the brief or orally if there's an oral argument. There's also the argument that there were limited in the reply brief as to the claims that are being made in the response, and they weren't able to bring up these particular arguments in the reply brief before the court. I didn't hear counsel say that, although he may have and I may have just missed it. I thought he was complaining about the page limitation, which we all chafe under in the district court. But you can always ask for more space if you need it. We're trying to decide the case. I think if we spend all of our time, if you wish to, discussing whether or not an issue has been raised or not, you may never get to the substance of your argument. So I encourage you to talk about substance. We'll figure out what's been waived. Yes, Your Honor. Let me talk about Element 5 as long as we've started there. I'll talk about the reasons why, in our view, Element 5 is anticipated by the JP131 reference. JP131 discloses an interlayer coded with color, a colorant that's transferred to the enclosed. In this case, it's a processed ham. That's at A. You'll find that at 108.3 of the joint appendix and at 108.4 of the joint appendix, which is a citation directly to the JP131 reference. Maureen Reitman, Dr. Reitman, provided a declaration in support of the motion for summary judgment. She said the absorbent interlayer in the JP131 reference is coded with a coloring agent, which transfers color to the enclosed foodstuff. This is similar to the demonstration of color transfer described above in JP131 and is the expected outcome when coloring or flavoring agents are coded into this type of material. Now, her testimony in the form of this declaration is unrebutted by Dr. Gilbert. But we don't rely exclusively on Dr. Reitman's declaration. Frankly, we rely more heavily on the disclosure in JP131 itself. As I've said, JP131 discloses that a colorant will be applied to the interlayer. And remember, we rely on the alternative embodiment of JP131, not cellophane, but where cellophane has been replaced by a water-absorbent material. So what we know then, what one of ordinary skill knows, is that this colorant is applied to this interlayer and it will be absorbed by the interlayer. How do we know that? Well, JP131 uses the word absorbed when it refers to the property of being a rich water-absorbent material. It uses the word absorbed. And interesting, so does the 613 patent. In column 1, line 50, the inventors of the 613 patent use the word impregnate synonymously with absorb. I think it's clear and I think the only way to read the record below is that the experts understood and Judge Bucklow understood that when one applies this colorant to this absorbent interlayer, it's going to be absorbed. It's the same thing that happens both in JP131 and one of ordinary skill would understand in the 613 patent. So there's absolute anticipation based on the face of the disclosure and the prior reference. And one really doesn't have to rely on Dr. Reitman's declaration, although it's very helpful because she explains to us in a unique way that we as lay people are unable to do ourselves. She explains to us how one of ordinary skill would read and understand the prior reference. Let me move to what we call element 4. Element 4, this is the element relating to the interlayer comprising fibers. In the court below, we relied on, in our motion for summary judgment, we relied on the embodiment in JP131 that discloses that cellophane has been replaced by an absorbent material. In opposing that in the court below, WorldPAC made one argument, and the one argument was an argument that didn't meet ours. They assumed that the only embodiment in JP131 was the embodiment including the cellophane. It ignored the fact that there was this alternative embodiment. Consequently, the arguments that were made in the court below by WorldPAC are not the arguments they're making now. They're making entirely new arguments now with respect to element 4. And again, under the rules of this court, those arguments are waived. But let me go ahead and address the disclosure in JP131, assuming for purposes of argument that there hasn't been a waiver, even though we believe that there has. JP131 discloses an inner layer of cellophane, or as I've said, another material, this is a quote, another material having the same properties. That's in column 4 in the second to last paragraph of the JP131 reference. The properties of cellophane that JP131 discloses are two. In the court below, Judge Bucklow chided us a little bit because we argued there was only one in our moving papers, and she said, no, there are two. And they are a rich water-absorbing property, and two, the ability to shrink when heated. There are two properties that are disclosed. Judge Bucklow reads the disclosure of JP131 to be referring, when it says similar properties, to be referring to this property of rich water absorption. And she reasons that that's the case because this reference to an alternative material arises in the context of a discussion, she says, of the prior art where the discussion is all about transferring color from the inner layer to the meat product. So she has no difficulty looking at the disclosure of JP131 and seeing on the face of the disclosure that the disclosure is talking, and the alternative embodiment is talking about this property of rich water absorption. Now, helpfully, the experts agree with that. By the end of discovery, it was clear that the experts on both sides agreed that all of the limitations that are claimed in the 613 patent, in the asserted claim, that all of those limitations were anticipated because they're disclosed in JP131, including this limitation. Now, Dr. Gilbert's testimony is maybe most interesting in connection with this. And recall he testified three times. He gave a deposition in April of 2010. He testified in the preliminary injunction hearing, and then he testified near the end of discovery in November of 2010. Now, in his April deposition, he said simply in response to a question, he said that he agreed that this element four is disclosed in JP131, without much elaboration because the questioning didn't call on him to elaborate. During the preliminary injunction testimony, Dr. Gilbert started to talk about a disclosure of Japanese and Western paper in JP131, but he was cut off by his lawyer. And when this case's counsel asked him about that disclosure, if you can see it in the record, the testimony got sidetracked, and they never really got to the issue. But in his November 2010 deposition, this was explored in detail. And the following can be found in the record. He agreed in his testimony in November that another material having the same properties refers to a material with rich water-absorbing properties,  so he agrees with Judge Bucklow there. He agrees that fibrous materials have rich water-absorbing properties, and that would be known to one of ordinary skill at the relevant time. He agrees that fibrous materials with rich water-absorbing properties include some fabrics. In fabrics, everyone agrees, if there's a fabric disclosed for the inner layer in the JP131 reference, if everyone agrees, then that means the claim for, or the element four is anticipated by JP131, not disputed. And Dr. Gilbert agrees with that. Now, interestingly, there was a break in the deposition, and after the break, Dr. Gilbert came back, and you can see this in the record, at 931 through 932 of the joint appendix. He comes back and he says, oh, I should have said something more. I forgot to say that JP131 also discloses paper, discloses Japanese and Western paper. And then he goes on, in response to questions, to agree that paper would be fibrous, and therefore can conclude that because it's fibrous, that this requirement of an inner layer comprising fibers would be met if JP131 includes a disclosure of paper. And Dr. Reitman, of course, agrees. And so the record is clear that the experts agree that element four is met as well. Let me turn to element two in the time that I have a list of questions about element four. Let me turn to element two. JP131 discloses a water-resistant foil of polyethylene and nylon. The reference to water-resistant is at the bottom of the first column, 1082 of the appendix. The reference to polyethylene and nylon appears in column five in the description of the figures, and if you look at the figures, the figures also disclose that this outer layer will have at least polyethylene and nylon. So the structure, the identical structure, pardon me, is disclosed in JP131 as one finds claimed in the 613 patch. Now we argued below, and I think Judge Bucklow was somewhat influenced by this, that claim eight makes it absolutely clear, claim eight is a dependent claim, and it recites, quote, a barrier casing, according to claim one, wherein the impermeable plastic foil comprises at least two foils laminated together and selected from the group consisting of polyethylene foil and polyamide foil, nylon foil. So we think that claim eight makes it clear that whenever one finds that structure, it is definitionally an impermeable plastic foil, pardon me. For purposes of this patent, if you find that structure, it is an impermeable plastic foil. And that does seem to have influenced Judge Bucklow. But there's more, because here, too, the experts agree that one of ordinary skill would read JP131 and understand it to be disclosing the impermeable plastic foil that's claimed in the 613 patch. This time, Dr. Gilbert agreed with that three different times. He agreed with it in the preliminary injunction hearing when he was asked direct questions about it, and that can be found at 805 through 806 and 808 of the joint appendix. He agreed with that when he was asked the direct question about it in his April 20th deposition. That can be found at 865 of the joint appendix. He agreed with it in his November 30th deposition near the close of discovery, and that can be found at 926 through 27 of the joint appendix. And, of course, Dr. Wrighton agreed with him. So there's no dispute that the experts agree that one of ordinary skill would read JP131 and understand it to disclose the impermeable plastic foil limitation that we refer to as Element 2. So on that record, I only have a short moment left. On that record, I hate to minimize the importance of what we're doing here this morning, but I think it was easy for Judge Bucklow to find that there was no genuine dispute that required a trial. The experts agreed. The disclosures are there on the face of JP131. I can see that it's helpful to have the testimony of experts about how one of ordinary skill would understand JP131 when it's read, because as laypeople, we don't necessarily read things in the same way, but it's clear from the testimony of the experts what one of ordinary skill would understand in reading JP131. And I don't know how Judge Bucklow could have ruled otherwise, given the record that was developed before her and the arguments that were presented to her on the motion for summary judgment. And, therefore, this case respectfully asks this Court to affirm the judgment below. Thank you very much. If there are no further questions, I'll sit down. Thank you, Mr. Larimer. Mr. Rosen? I think in order for Judge Bucklow to have found it easy to grant the summary judgment anticipation, it was necessary for her to find that all of the favorable testimony, favorable to this case testimony that Dr. Gilbert gave, was binding admissions on WorldPAC. Because his testimony was inconsistent. It was inconsistent internally and it was inconsistent with his report. I think what in effect happened here was the bad stuff was treated as though it was not only a Rule 801 type admission of a party, which in fact expert testimony is not, but that it was in effect a binding judicial admission. So no question, and as I conceded before, they got some stuff that's helpful to them from Dr. Gilbert. And when Dr. Gilbert testifies at trial, he's going to probably be hearing it from both sides about some of his prior testimony. But, nonetheless, there was a dispute of fact. And on any of these elements, if the only testimony, if the only thing in the record had been Dr. Gilbert's report and testimony. How do you characterize what the dispute of fact comes from? It comes from his report, right? And some internal stuff in the deposition testimony. For example. But that report's hearsay, isn't it? The report was submitted with this case's summary judgment papers. So this case was relying upon it. We relied upon it in our response. At that point, this case never said, you know, gee, even an affidavit is hearsay. This case never said, even an affidavit is hearsay. If it's hearsay. But it's still an out-of-court statement. But this case relied upon it in the form it was in. We relied upon it in response. This case didn't complain that that little detail hadn't been cleaned up. And I think there's a Third Circuit case we both discussed in the briefs where the court said, we don't want to excuse every technical error. But in this instance where it was something that could have been raised, it could have been easily corrected. We're not going to disregard the declaration because it wasn't sworn. And I think that's the situation you have here. Did this case object to the report? No, this case put it in and did not object to us also relying upon it in that format. Just briefly, I think opposing counsel minimizes the importance of the 56.1 statement. That's where the issue is joined on summary judgment, just as a complaint and answer joins it for the case as a whole. And in fact, we do know what the district court did with the 56.1 here because it's cited in a number of places in the district court opinion. And finally, with respect to element four, now I've conceded that Dr. Gilbert gave them some helpful testimony. I argue that that would be testimony helpful on obviousness, not anticipation. But I do want to address the particular point that once or twice Gilbert testified, yes, element four is disclosed. Because the district court did put a lot of importance on that and in fact said that statement overrides some of the other things he has in his report and his testimony. I'd like to suggest it should really just be the opposite, that what's important from an expert witness is their analysis, what they have to tell us about the science and the materials and the mechanisms involved, not when they make an overall conclusory statement about the ultimate issue. They haven't been fully informed about the law like the ultimate fact finder will be. Really, greater weight should be given to their underlying analysis and less to the fact that an unpracticed, unpolished expert witness makes a conclusory statement on an ultimate issue like that. So I do thank the court for the additional time. Thank you, Mr. Rosen, Mr. Lyle. The case is taken under submission.